Good morning, your honors. Stanton Matthews on behalf of Officer Paul Tapia, the appellant in this matter. My primary purpose for coming this morning was to present myself to answer, hopefully answer, any questions there may be. I can say this because I didn't write the brief. I was very pleased with the brief and felt that it stated our points in a cogent manner and well supported. One point that I would like to point out, and it appears not only to me but also to Mr. Funk who wrote this brief, that the linchpin or the keystone of where the district court went terribly wrong in the analysis here was in relying upon a declaration by counsel for the defendants in this case that rewrote the municipal ordinance, the municipal code. And this was key in this matter because what was inserted was a word that ultimately led the court off on a path that then caused the analysis to be completely going down the wrong road. I'm specifically referring to the declaration of Fancy Mesa wherein she quotes, allegedly quotes from the municipal code saying, the city manager holds the, and then the word final is inserted. It is not in the municipal code. So the way she presented it was, the city manager holds the final power of appointment and removal of city employees. That was a nefarious mistake because in this situation, what happened was then the court, for whatever reason, didn't follow JET, which says it's the court's responsibility to identify all policy makers, and the court didn't go on further to read the other ordinance that had been submitted, which states that the city manager shall act as the agent of the city council and mayor in carrying out and discharging the administrative duties of the city manager's office. I can understand how this happened to the court. How can I stand here and point my finger at the court when I was participating in the opposition to summary judgment and my mind was focused obviously on other points because it wasn't until we began to write the brief that the aha moment came and it was, wait a minute, this isn't what the city ordinance states. And in fact, in this case, the court should have determined and the court even states in its written opinion, in granting the summary judgment, had the city manager had authority, the court would be on our side and would have denied the motion for summary judgment. This would have been over. Was this a question of fact? I mean, I've had experience with other cases and the different forms of government that were the city manager versus the police chief or maybe all together have the ultimate decision-making authority and any one of them can act. And so I'm wondering if this is a question of fact or a question of law. That issue often comes up, Your Honor. Now, in this particular case, it wasn't so much. It was a question of fact and it's to be turned and the law says it's to be determined by the trial judge. It's not an issue that goes to the jury. And it guides and the trial judge is guided by law that says the trial judge should look to such things as city ordinances, municipal codes, et cetera, et cetera. And doesn't State law bear on it as well? I'm sorry, Your Honor. Didn't hear you. Doesn't State law bear on it as well? Absolutely. And as the Court is probably mindful and I'm thinking you're referring to the government code section that the trial court cited to. And in that situation, obviously the government code states what it states, but it certainly seems contrary to the way that things actually work. I don't know many chiefs of police that serve at the pleasure of the city manager rather they serve at the pleasure of the mayor and the city council. Well, it depends on what kind of a mayor-council system you have. There's a mayor who is a separate authority above the council and it's a question of who has what authority. But this is a council-mayor system where the mayor is a member of the council. That's correct, Your Honor. And he's sort of the – sometimes it rotates among the members of the council. Exactly. All right. So who were you claiming is the – In this instance, Your Honor, we – it was our position – it's our position that what happened because of the language saying, you know, the final authority, the Court just caught up on that, said, well, here it is, city manager's final authority, and these plaintiffs didn't allege that the city manager did anything wrong, so you're gone. Well, in fact, what happened was – Now, who is it you allege has the final authority? The mayor, a policymaker. And the term of art that the Court – the cases use in all of these cases is they look to find out where the person – All right. So your case is that the mayor is the final policymaker or one of the final policymakers. Is a policymaker, yes, Your Honor. But it's – what power does he have other than the power of the council? What other than the power he has as a member of the council? As we pointed out in the brief, the mayor has the power of ultimate say with regard to procedural issues. Now, so far as the municipal code goes, it only speaks to procedural issues. In my mind, I don't necessarily think that this – the firing of the officer was a procedural issue. No, it would not seem to be. I didn't want to stretch that far. But it appears to me that what happens is you read the code, and we put the municipal code in here for the Court to read. It does state that the city manager acts as the agent for the city council. All right. So I can understand your argument that the city council is a final policymaker. Is a final policymaker. But that's not what you're relying on here. You're relying on a mayor as a final policymaker. As also a final policymaker, yes, Your Honor. And how does – I said how does his role differ from that of any other individual member of the council? His actions don't make those the actions of the council. That's not what you're claiming. He says he has some authority that makes him a final policymaker. And when I ask sort of where is the authority that distinguishes him from all the other members of the council, and you wouldn't argue any other individual member of the council as an individual as a final policymaker, you say it's the difference between the mayor and the other members of the council. And that difference, as you've said so far, is that he has procedural rights. Yes, which I don't believe was the issue. He's involved here. So where is it that he is different from any other member of the council? Okay. Well, here's where I need to bring the Court back a little bit, and I think it's because I confused everybody by the way I started off. The law looks to see whether or not the wrongful action was carried out by a policymaker. The term final policymaker is not used by the courts when looking and analyzing these types of cases. The court looks to see whether or not the person who did the wrongful act was in the position of a policymaker. For instance, there's one case that we cited. So that would mean any member of the city council would be a policymaker. Yes, Your Honor. We know that the council could be a policymaker. Yes, Your Honor. But what support is there for the idea that any individual member of the council is a policymaker? The way I would answer that, Your Honor, is in my reading of the municipal code, is that it appears that if there is a disagreement on an action of one of the members of the council, in particular it addresses the issue of the mayor, that there can be an appeal lodged by a city council member of that decision. In this case, there was no appeal lodged by any of the other council members on the firing of Mr. Tapia after he completed his probation. There was nothing like that. So what we're saying here is, and for instance, one of the cases that the court cited to us was a case that on its face would seem to be pretty analogous, except for the court's analysis was going down another line in that case. And that involved a county sheriff. And the issue was, is the county sheriff a policymaker? And the answer was no. So, therefore, in that case, there was no municipality liability under Monell because you have to have a policymaker making that decision. And the only way under Monell that that can be is if it is a policymaker who makes the decision. Well, is the police chief a policymaker himself? You would think so, wouldn't you? Well, if he, I mean, he's the one who has authority to fire or hire. Correct. So whether or not he was pressured by the mayor, is that really relevant to a wrongful termination claim here? Well, certainly if the court had found, as we alleged, that Chief Wadley acted inappropriately in firing Mr. Tapia because he had completed his probation, we wouldn't be here today. But the court looked beyond that and said we are looking to, because our allegations were based on the testimony we gathered in discovery, was that this was a municipal corruption case. And what happened was the mayor wanted to get rid of this do-gooder that was coming up and was questioning a lot of things that were happening in the city of Huntington Park. And so our case was focused on the testimony, which was it was the mayor that was trying to get rid of the do-gooder. And it was Chief Wadley who then ends up delivering the news. And as we presented in the brief, Chief Wadley had said prior to this, Tapia is doing great. He's going to complete probation. But you know we're talking about who's the policymaker. And you said that the chief is a policymaker. Not in this case, Your Honor. Not in this case. Okay. So the chief's not a policymaker, but every member of the city council is? In this situation. In his individual capacity. In this situation, that's the way it works out, yes. Okay. Well, you know, at least we've clarified the issue. I hope so. I hope so. I'm not saying the answer to the question. I take it that way, Your Honor. You understand what the issue is. Is every member of the city council individually a policymaker? Is a policymaker, yes, which includes the mayor. All right. I think we're over. Okay. I apologize. Does that mean I'm out of time? You don't have to apologize. We questioned you. Okay. Thank you, Your Honor. If we had gotten bored, we would have let you know. Thank you. Thank you. Your Honors, good morning. Mayor of the Police Court. My name is Shell Harrell, and I'm here for this event at Huntington Park. I believe that the issue was resolved as an issue of law by the trial court, consistent with what this court has said. The Delia case, which involved the city of Rialto, came out just before we were scheduled to have trial here, and that made very clear, at least to my reading and the trial court's reading, that the issue of who is a final policymaker is an issue of law for the trial court to be resolved based on what the city code says, what state law says. But can there be more than one final policymaker? Your Honor, I think final was addressed. It hasn't been addressed by this court that I can see, but it was addressed by a trial court in San Francisco, the Zagrafos Court, and that indicated that a final policymaker means that the decision made is final, unreviewable, and not constrained by official policies of superiors. I believe it was based on that language that plaintiff's counsel has conceded, and rightly so, under the city code. The chief is not a policymaker for purposes of the Manel case. So the issue comes down to who is the final policymaker. Your Honor, it would be the entire city of counsel. But acting as a unit, is that what you're saying? Acting as a unit. You'd have to act as a unit. There is evidence in the record to suggest that someone pressured Wadley to fire Tapia. And what we don't know is whether that someone was acting on behalf of the counsel or was acting individually. We just don't know that. Your Honor, the way I looked at it, and I believe the way the trial court looked at it, it was a failure of proof on the plaintiff's part. Plaintiff had a lot of theories. Because you don't have to prove at summary judgment. You just have to show that there's a genuine issue of material fact. You prove at trial. I do agree, and I apologize for my inartful language. Plaintiff failed to come forward with admissible evidence that would have brought the matter out of the realm of speculation and what if. Let me ask you this. At summary judgment, did your opponents allege that the counsel was responsible for the mayor's action and that the counsel was the do you both agree the counsel is the policymaker, the final policymaker? The final policymaker, yes. And was there any evidence that the counsel had acted or only that a member of the counsel had acted? There was absolutely no allegations or mentions of anyone in the five-member city council other than the then mayor. They made allegations that amounted to speculation against the mayor that she may have said certain things to certain individuals that didn't say other things, but they didn't have any evidence and didn't mention that the entire member of the city council was aware of any of the statements that the plaintiff claims he was retaliated against for. And it has not been exactly addressed by this court that I could see, but there were two circuits that we could see, at least at the time that the briefs were written, that had addressed that. One was the RAG case out of the Seventh Circuit, and they indicated there that one allegation against one individual member of a city council is not enough to frame a cause of action against a city. You need to show that at least the majority of the city council was aware of what was going on and endorsed it before it's fair to charge that to a city and convene a trial. The other case was the Macy. It would be very hard to get direct evidence of that, wouldn't it? Your Honor, I don't know. The plaintiff did not try. The plaintiff did not take the depositions of anybody else in the city council, ask them what they were thinking. So there's just nothing in the record. It's very much like in the RAG case and the Macy case, where the plaintiff was in the same posture. They made a lot of allegations against one member of the council and didn't bring any evidence at summary judgment to the trial court. So in both of those cases, I believe the issue in front of this court was resolved in favor of the city on the theory that if you want to charge the city with something and convene a trial, you need to make an evidentiary showing as regards a majority of the city council. Something. Plaintiff here, as to how much that would be or how hard it would be, I would submit with respect to the other side, that's not in front of the court because there wasn't an effort on their part to gather that information. Let me see if I understand you. The policymakers are the members of the city council. Acting as a unit. Acting as a unit. And the mayoral responsibilities procedurally, I understand, is that the mayor can pronounce the policy decisions which the entire council has concluded or arrived at. Right? Your Honor, with respect, I don't think that that is the Huntington Park Muni Code. But we don't have the possibility of one city council member saying, this is our policy, and another saying, this is our policy, and having two different policies, do we? No. So may I assume then that a policy decision of this nature is made in either a formalized fashion or some kind of legal context from which can arise the decision that we can look to as a court. Is that correct? Yes. There must be some type of meeting and some record of that. Other than meeting in a coffee shop and chewing the fat, there's nothing even of that nature here, is there? California has rules against that. Exactly. Exactly. So then if we are to discern that a policy decision was made, as the plaintiff claims, as to releasing this particular probationary officer, there would appear to be either some record made, or there would appear to have been someone testified that, in fact, this decision was made. Is that right? That's exactly right. Do you have evidence of that? There is none. There is nothing in the record. In fact, it's a public record. Anything the city council says and does as an official body, as policy of the city, is available online, as a matter of fact. Is there any evidence of delegation of certain personnel matters, such as hiring and firing and promotion and other such matters, to department heads, such as the chief of police or someone else, that would, in fact, under the statutes of California, be permitted and be the basis upon which one could extend liability? There is nothing in the record here that would extend to that. Again, the plaintiff had a number of grievances against the then chief. He has a number of grievances against the then mayor. But it didn't broaden out to the city council, which by law, which by state law, and under the Huntington Park Muni Code, is the body that makes the policy for the city of Huntington Park. I see I have about two minutes left. If the court has any other questions, I'll be happy to try to answer them. Thank you. I do think the court has questions. Do you have one, Mr. Arnold? Yes. What I would like to point out to the court is the case of Pembauer v. City of Cincinnati. In that case, the court held that municipal liability may be imposed for a single decision by a municipal policymaker. And in this particular case, that's essentially what we're saying. Now, the question is nobody's arguing about that. They're only arguing about who is the policymaker. And did you allege facts sufficient to show that the city council did something in this case? Although at times you seem to say that it doesn't – it's not just the city council. It's any member of the city council. Is that your theory, that any member of the city council is the policymaker? Each and every one is a policymaker, yes. When he acts individually, not on behalf of the entire council. And absent corruption that causes a person in a policymaking decision to do something that is outside the law and wrongful, you would have the meeting that was discussed. You would have the record of what was discussed. And in this particular instance, you have the mayor who went ahead and said get rid of that do-gooder. Okay. Let me ask you. Take the Los Angeles City Council. Okay. And assume it's the policymaker. I assume so. Okay. And take one of the 15 corrupt members of the council. Okay. Assume there is a corrupt member of the council. All right. I mean, unlikely as it may be, and that that corrupt member engages in some action for his own benefit. Yes. Does that make the city of Los Angeles liable for what he does? As a policymaker, yes, it does. Okay. Now, what you would hope is that the city would operate properly, and the members of the council would come back and call that person on the carpet and say, what are you doing here? Okay. But you would hope that. You would hope that, yes. But in any event, if it's not even brought to the attention of the council, but in any event, the city would be liable for the actions of that one corrupt member. Yes. Under Pembro, you're right. Yes. Okay. All right. That's the issue. Okay. My last point, Your Honor, was I wanted to leave this with the court, and that is that the municipal code section 2-3.409, the city manager shall act as the agent for the council in the discharge of its administrative functions. And the municipal code goes on. The city manager operates under the direction and authority of the city council, whose presiding officer is the mayor. Thank you, Your Honor. Thank you very much. One more question. One more question. I agree. But do you have any evidence that a policy was made such that the city manager would have communicated, other than alleging corruption? Could you repeat that? I'm not tracking. I'm sorry. If, in fact, the council is the policymaker. Yes. And the city manager acts as agent for the council. Okay. Do you have any evidence as to where the communication was, other than indicating that there was a conspiracy? The evidence that we were able to gather in discovery was that there was a phone call from the mayor to Chief Wadley. The Chief Wadley then in discussing his uneasiness with the situation with the former chief of police, that, Your Honor, is where the evidence is. Did I answer your question? Well, kind of. I felt like I wasn't getting right to it. Thank you. Thank you, Your Honor. Thank you. Thank you both very much. The case just argued will be submitted.
judges: Bell, Reinhardt, Wardlaw